Chief Justice SAYLOR,
concurring.
I join the majority opinion and write to suggest that, if the manner in which a farming practice is carried out deviates substantially from the norm and has unusual adverse effects upon neighboring properties, at some point that particular method of implementing the practice should be viewed as a distinct practice whose agricultural normalcy should be independently evaluated. Indeed, the line separating a farming industry practice as such, and the particular manner in which it is implemented, may not always be clear. Cf. Majority Opinion, at 682, 131 A.3d at 19 (explaining that the question of whether an agricultural operation is “normal” for Section 954(a) purposes “is a broad one, focusing on the practice in general, not on whether the defendant ... conducted the practice in accordance with accepted industry standards and regulations”).
Here, a significant issue, to my mind, is whether the application of biosolids on farmland, no matter how it is undertaken, constitutes a single “agricultural operation[ ]” for purposes of the statute of repose. 3 P.S. § 954(a). The majority concludes that it does and that it is agriculturally normal. See Majority Opinion, at 683-85, 131 A.3d at 20-22. The majority continues that “the manner in which biosolids are applied at a particular site is not determinative of the practice’s normalcy,” but, instead, “go[es] to the underlying merits of the nuisance claim[.]” Id. at 685, 131 A.3d at 21-22 (emphasis added). Although, as explained below, I ultimately agree with the *689 majority, I see the issue as a close one, for the following reasons.
There was evidence that, as used by Hilltop Farms, the biosolids were, for the most part, applied to the surface of the land and were not plowed into the soil. See N.T., Feb. 16, 2012, at 26 (deposition of Synagro employee Jonathan Coble), reproduced in R.R. 373a. In this regard, a fact sheet issued by the United States Environmental Protection Agency lists various methods to reduce odors at land application sites, including subsurface injection or incorporation of biosolids into the soil. See Biosolids and Residuals Management Fact Sheet, EPA 832-F-00-067, at 2 (Sept.2000), reproduced in R.R. 579a; see also Brief for Appellees at 4-7, 46-49 (suggesting that Appellants failed to take known precautions to reduce or control odors). Further, Appellees contend incorporation of best practices into a farming methodology is an essential part of the agricultural operation itself for purposes of a judicial normalcy determination under the Right To Farm Act (“RTFA”). They note that courts in other States have reached similar outcomes under the right-to-farm legislation pertaining in those jurisdictions. See Brief for Appellees at 57-58 (citing Wyatt v. Sussex Surry, LLC, 2007 WL 5969399 (Va.Cir.Ct.2007); Trosclair v. Matrana’s Produce, Inc., 717 So.2d 1257 (La.Ct.App.1998)).
I ultimately agree with the majority that, on the present record, application of biosolids is the appropriate categorization for assessment under Section 954(a). RTFA’s stated legislative objectives are broadly remedial, accord Brief for Amicus Curiae Attorney General at 9 (observing that RTFA is a “broad and anticipatory statute aimed at protecting agricultural land and operations now and into the future”),[1] and as such, it is subject to a liberal construction designed to effectuate its objectives. See 1 Pa.C.S. § 1928(c). As for the enactments at issue in Wyatt and Trosclair, those provisions are not statutes of repose and, moreover, unlike in Pennsylvania, *690 they grant immunity from nuisance liability expressly in terms of agricultural operations conducted in accordance with best-management practices. See Wyatt, 2007 WL 5969399, at *2 (quoting Va.Code Ann. § 3.1-22.29(A)); Trosclair, 717 So.2d at 1259 (quoting La. Rev. Stat. Ann. § 3:3603(B)). Given these differences, I view the majority’s present, broad categorical approach to the surface application of biosolids as appropriately balancing the protections afforded by RTFA with neighboring property owners’ reasonable ability to challenge substantially altered conditions on the subject farm in a timely manner. With that said, I note that agricultural knowledge tends to develop and improve over time. Thus, I would not rule out the possibility that an evidentiary record in a future dispute could support the concept that the use of certain identified odor-control practices is necessary for a particular application of biosolids to qualify as “normal” and, thus, to fall within Section 954(a)’s protective scope.
Justice TODD joins this concurring opinion.

. “It is the declared policy of the Commonwealth to conserve and protect and encourage the development and improvement of its agricultural land for the production of food and other agricultural products .... It is the purpose of [RTFA] to reduce the loss to the Commonwealth of its agricultural resources by limiting the circumstances under which agricultural operations may be the subject matter of nuisance suits and ordinances.” 3 P.S, § 951.